IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| **BEAZLEY UNDERWRITING, LTD.,** | : | |
| Plaintiff, | : | |
| v. | : | 5:16-CV-347 (CAR) |
| **GO GREEN BIOPRODUCTS, LLC,** *et al.*, | : | |
| Defendants. | : | |

## ORDER ON MOTION FOR DEFAULT JUDGMENT

On July 28, 2016, Plaintiff Beazley Underwriting filed this action for rescission of an insurance policy or, in the alternative, a declaratory judgment specifying Plaintiff's rights, duties, and obligations under the policy. Before the Court is Plaintiff's Motion for Default Judgment against Defendants DanCar Holdings, Tony Heath, Ryan Penderquest (a.k.a. Ryan Pendergast), Phillip R. Davis, and Recycle, Inc. Having fully considered Plaintiff's arguments, the Complaint, and the relevant law, the Court **HEREBY GRANTS** Plaintiff's Motion [Doc. 36] for the reasons set forth below.

### BACKGROUND

According to the Complaint, Defendant Bioproducts rented a building in Dry Branch, Georgia, (the "Dry Branch Site") from Defendants Davis and Recycle beginning in April of 2012. Defendant Bioproducts operated a Gala 3000 model wash line (the

1

"wash line") at the Dry Branch Site. In September of 2013, Defendants Davis and Recycle initiated eviction proceedings against Defendant Bioproducts and claimed to own the wash line.[1] Due to the ownership dispute, the wash line remained at the Dry Branch Site.

In June of 2014, Defendants Bioproducts, TMD Technologies, DanCar Holdings, Tony Heath, and Ryan Penderquest (collectively, the "Insureds") applied for an insurance policy covering the wash line from Plaintiff Beazley Underwriting.[2] The Insureds, however, failed to inform Plaintiff of Defendant Bioproducts' eviction from the Dry Branch Site—where the wash line was located—and the ownership dispute over the wash line.[3] In July of 2014, Plaintiff issued the insurance policy to the Insureds.[4] One year later, the Insureds renewed the policy.[5]

On February 24, 2016, a fire at the Dry Branch Site damaged the wash line, and the Insureds sought insurance coverage.[6] Plaintiff's inspections indicated the wash line could be repaired for $185,000.00.[7] During its investigation of these events, Plaintiff examined under oath a representative of Defendant Bioproducts and learned of the Insureds' omissions.[8] According to Plaintiff, it would not have issued the policy had it

---

[1] [Doc. 1, pp. 4-7, ¶¶ 14-27].
[2] *Id.* at p. 9, ¶ 38.
[3] *Id.* at p. 9, ¶¶ 40-42.
[4] *Id.* at p. 10, ¶ 43.
[5] *Id.* at p. 10, ¶ 44.
[6] *Id.* at pp. 15-16, ¶¶ 55-59.
[7] *Id.* at p. 18, ¶ 69.
[8] *Id.* at p. 16, ¶¶ 60-61.

known the omitted facts.[9]

On July 28, 2016, Plaintiff filed the instant Complaint to rescind the insurance policy. Defendants Bioproducts, TMD Technologies, and Biological & Environmental Solutions each filed answers to the Complaint. Defendants DanCar, Heath, Penderquest, Davis, and Recycle, however, were served with process but failed to file a responsive pleading.[10] Plaintiff therefore moved for entry of default as to the non-responding defendants, and the Clerk of Court entered default on September 8, 2016.

On September 28, 2016, Plaintiff moved for default judgment against the defaulting Defendants. To avoid the possibility of inconsistent judgments, the Court denied Plaintiff's motion as premature and instructed Plaintiff to file a renewed motion for default judgment after the case was resolved against the non-defaulting Defendants.[11] Subsequently, Plaintiff settled with each of the non-defaulting defendants and renewed its Motion for Default Judgment, which is now ripe for ruling.[12]

## DISCUSSION

The entry of default judgment is appropriate "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . and that fact is made to appear by affidavit or otherwise."[13] Prior to obtaining a default judgment, the party seeking judgment must first obtain an entry of default from the

---

[9] *Id.* at pp. 21-22, ¶¶ 91-95.
[10] [Doc. 5].
[11] [Doc. 33].
[12] [Doc. 36, p. 2].
[13] Fed. R. Civ. P. 55(a).

3

Clerk of Court.[14] Plaintiff has satisfied this requirement.

The mere entry of default, however, does not mandate the entry of a default judgment. Instead, the Court must find a sufficient basis in the pleadings for judgment to be entered.[15] Default is not an admission of liability, but it is an admission as to the well-pleaded facts in the complaint, and the defendant may not challenge those facts on appeal.[16] Once a court determines that default judgment should be entered, the court must then determine the amount and character of the recovery for which a sufficient basis is asserted in the complaint.[17]

In considering any motion for default judgment, the Court must examine (1) its jurisdiction; (2) liability; and (3) damages.[18] The Court has diversity jurisdiction over the instant case pursuant to 28 U.S.C. § 1332, and venue is proper under Local Rule 3.4 of this Court.[19]

This action is based on diversity of citizenship, and therefore the Court is

---

[14] *Id.*
[15] *Nishimatsu Constr. Co. Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all cases decided by the former Fifth Circuit before October 1, 1981.
[16] *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009).
[17] *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987).
[18] *See Pitts v. Seneca Sports, Inc.*, 321 F. Supp. 2d 1353, 1356 (S.D. Ga. 2004).
[19] Plaintiff is a citizen of the United Kingdom. Defendants Bioproducts and TMD are citizens of South Carolina. Defendants Heath, DanCar, Davis, and Recycle are citizens of Georgia. Defendant Biological and Environmental Solutions is a citizen of North Dakota. [Doc. 1, pp. 2-3]. The amount in controversy exceeds $75,000. [Doc. 1, p. 18]. Thus, complete diversity exists. *See* 28 U.S.C. § 1332(a)(2) (granting original jurisdiction in suits between "citizens of a State and citizens or subjects of a foreign state"). *See also Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 232 F.3d 854, 857-862 (11th Cir. 2000).

required to apply the choice of law rules of the forum state – Georgia.[20] Under Georgia law, the insurance policy at issue here is governed by the law of the state where the contract was made, unless the application of the foreign law would be contrary to Georgia public policy.[21] Here, the insurance policy was made in Georgia, and thus Georgia law governs.[22] Under Georgia law, when an applicant for insurance makes material misrepresentations or omissions during negotiations, the insurer is entitled to rescind the policy.[23]

Accepting the allegations in the Complaint as true, the Insureds made material omissions during negotiations for the policy. An omission is material where "[t]he insurer in good faith would . . . not have issued the policy or contract . . . if the true facts had been known to the insurer."[24] Here, the Insureds failed to inform Plaintiff of Defendant Bioproducts' eviction from the Dry Branch Site—where the wash line was located—and the ownership dispute over the wash line.[25] Had Plaintiff known the

---

[20] *See Klazon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941).
[21] *General Tel. Co. of the Se. v. Trimm*, 252 Ga. 95 (1984); O.C.G.A. § 1-3-9.
[22] *See* [Doc. 1-1, p. 8]; [Doc. 1-2, p. 8] (showing the policy was delivered to the Insureds' agent in Georgia). *See Lima Delta Co. v. Global Aerospace, Inc.*, 325 Ga. App. 76, 81 (2013) (holding a policy was made in Georgia where the broker accepted the policy in Georgia on the insured's behalf).
[23] *Home Indem. Co. Manchester, N.H. v. Toombs*, 910 F. Supp. 1569, 1573 (N.D. Ga. 1995). *See also Pope v. Mercury Indem. Co. of Georgia*, 297 Ga. App. 535, 538-39 (2009) (holding misrepresentation during negotiations warrants rescission); *Marchant v. Travelers Indem. Co. of Ill.*, 286 Ga. App. 370, 373 (2007) (noting "[a]ny verbal or written representations of facts by the assured to induce the acceptance of the risk, if material, must be true") (quoting *Farmers' Protective Fire Ins. Co. v. Weaver*, 44 Ga. App. 752, 753 (1932)).
[24] *Pope*, 297 Ga. App. at 537 (quoting O.C.G.A. § 33-24-7).
[25] [Doc. 1, p. 9, ¶¶ 40-42].

omitted facts, it would not have issued the policy.[26] For purposes of default judgment, a plaintiff's allegation it would not have issued the policy had it known the omitted facts is sufficient to establish a material omission, and thus the Insureds' omissions were material.[27] Although the omissions were unrelated to the fire at the Dry Branch Site, rescission "does not require that the information concealed be connected to the ultimate cause of the loss."[28] Accordingly, the Court declares the insurance policy **VOID.** Defendants therefore have no rights to the policy's proceeds.

## CONCLUSION

For the reasons set forth above, the Court **HEREBY GRANTS** Plaintiff's Motion for Default Judgment [Doc. 36].

**SO ORDERED,** this 15th day of August, 2017.

S/ C. Ashley Royal
C. ASHLEY ROYAL, SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

[26] *Id.* at pp. 21-22, ¶¶ 91-95.
[27] *See Nationwide Mut. Fire Ins. Co. v. Cato Dev., Inc.*; No. CV 110-118, 2011 WL 4017874, at *5 (S.D. Ga. Sept. 8, 2011).
[28] *Celtic Life Ins. Co. v. Monroe*, 220 Ga. App. 38, 39 (1996).